UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                                    Case No. 13-20764
                        Plaintiff,

v.                                                  Paul D. Borman
                                                    United States District Judge

WILLIAM FRAZIER, *et al.*,                          David R. Grand
                                                    United States Magistrate Judge

                        Defendants.
_____/


## REPORT AND RECOMMENDATION TO DENY PETITIONER'S MOTION UNDER § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF No. 879) AND HIS MOTION FOR "IMMEDIATE RELEASE" (ECF No. 957)

*Pro se* petitioner William Frazier ("Frazier") has filed a Motion under § 2255 to

Vacate, Set Aside, or Correct Sentence. (ECF No. 879.) Frazier also filed a "supplement"

to that motion (ECF No. 891), which elaborates on his arguments, and the government filed

a response (ECF No. 911). Frazier did not file a reply. Frazier has also filed a "Motion to

Adopt Federal Rules of Civil Procedure Pursuant to Rule 12 for Motion Attacking Sentence

and Grant Petitioner Immediate Release." (ECF No. 957) (the "Immediate Release

Motion"). Frazier's motions have been referred to the undersigned pursuant to 28 U.S.C.

§ 636(b)(1). (ECF No. 892, 958).

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Frazier's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF No. 879)** and his Immediate Release Motion **(ECF No. 957)** be **DENIED**.

## II.    REPORT

### A.     Factual Background[1]

> This appeal arises from the convictions of two members of the Phantom Motorcycle Club ("PMC"), William Frazier and Christopher Odum. The government brought various charges against these two appellants and twelve others in a fifteen-count indictment.  Although the case initially proceeded as a consolidated trial against all defendants, Frazier and Odum were severed, and the case against them proceeded separately.  After a three-week trial, the jury convicted Frazier of two counts of assault with a dangerous weapon in aid of racketeering, 18 U.S.C. § 1959(a)(3) (VICAR), and one count of use and carry of a firearm during, and in relation to, a crime of violence, 18 U.S.C. § 924(c).  Odum was convicted of conspiracy to commit murder in aid of racketeering, 18 U.S.C. § 1959(a)(5) (VICAR).
>
> * * *
>
> PMC is an "outlaw" motorcycle club that has existed since 1968.  The club has chapters in Michigan, Ohio, and six other states, and Detroit is the "mother" chapter. PMC has a hierarchical structure, with a national president, vice president, and enforcers.  Below the national officers are local chapters with presidents and vice presidents.  Members wear leather vests, known as "rags," which are important symbols in motorcycle club culture.  Rags display a certain member's club and that club's territory, and PMC competes with rival outlaw clubs to be the dominant club within certain territories.
>
> Frazier became the vice president of the Pontiac chapter of PMC in 2010 after transferring from another PMC chapter.  Frazier's charges

---

[1] The following factual background is quoted from the Sixth Circuit's November 30, 2017 decision affirming the conviction and sentence of Frazier (and one of his co-defendants, Christopher Odum) following his direct appeal.  (ECF No. 744).

and convictions in this case relate to a shooting that took place during a PMC anniversary gathering in Columbus, Ohio, in October 2012. After arriving in Columbus for the event, Frazier met up with other Phantoms—Vincente Phillips and Maurice Williams—at the PMC clubhouse there.  These three men, while wearing their rags, went to get food at another club's clubhouse.  While there, a man wearing a third club's rags bumped into Williams, and Williams and Phillips began fighting with him and another man who attempted to intervene. Seeing this altercation, Frazier fired two shots, hitting Keith Foster and Shalamar Thompson, who were both members of the Zulus motorcycle club.  The PMC members then fled the scene and immediately returned to the PMC clubhouse to report to PMC leaders what happened.  It was later determined that Foster was the Zulus's national president. As a result, PMC leadership decided that the Pontiac chapter would have to pay for the PMC national president, Antonio Johnson, to travel to Cleveland to meet with the Zulus in order to prevent retaliation for the shooting.  At trial, Williams, Phillips, and Phantom-turned government informant Carl Miller all testified to this incident.

(ECF No. 744, PageID.11335-37).

Frazier was sentenced to serve a total 144 months in prison on account of his conviction of the two VICAR charges and the § 924(c) charge.  (ECF No. 679).

## B.    Procedural Background

### i.    Initial Direct Appeal to the Sixth Circuit

Following his conviction and sentencing, Frazier filed a direct appeal with the Sixth Circuit Court of Appeals.  As to the VICAR charges, Frazier argued that his convictions must be reversed because: (1) insufficient evidence existed to convict him; (2) the government failed to prove that PMC was engaged in "racketeering"; and (3) insufficient evidence existed that he shot the two Zulus for the purpose of "maintaining or increasing" his position within PMC.  (ECF No. 744, PageID.13337-44).  As to the § 924(c) charge for use and carrying of a firearm during, and in relation to, a crime of violence, Frazier argued

that his conviction must be reversed because: (1) insufficient evidence supported his VICAR conviction, and since that was the predicate "crime of violence" for the § 924(c) charge, that charge, too, was not supported by sufficient evidence; (2) the Eastern District of Michigan was not a proper venue for the § 924(c) charge because the shooting took place outside the district, in Ohio; and (3) § 924(c) is unconstitutionally vague under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  (*Id.*, PageID.13344-45).  Finally, Frazier made a number of arguments related more generally to the fairness of his trial, including: (1) the Court incorrectly allowed several hearsay statements to be introduced; and (2) he was denied due process because the government chose not to call shooting victim Foster as a witness at trial and failed to turn over a shell casing and spent bullet from the shooting scene.  (*Id.*, PageID.11345-49).

The Sixth Circuit rejected all of Frazier's arguments, though the Court will focus here only on those that are germane to his instant § 2255 Motion.  First, as to Frazier's VICAR arguments, the Sixth Circuit held that sufficient evidence existed for a rational jury to conclude that PMC was an association-in-fact enterprise engaged in racketeering activity, and that  PMC's purposes were to preserve and protect the organization's "power, territory, and reputation through the use of intimidation [and] violence" and to make money by stealing and trafficking in motorcycles.  Second, the Sixth Circuit found that a rational jury could find that Frazier's violent defense of fellow gang members – even if it began from a "spontaneous fight," as opposed to a premeditated plan – "was undertaken to preserve standing in the gang" because the gang "expected its members to retaliate violently when someone disrespected or threatened a fellow member."  Third, the Sixth

Circuit found that because sufficient evidence supported Frazier's VICAR conviction, that conviction could serve as a proper "predicate crime of violence" to support his § 924(c) conviction.  Next, the Sixth Circuit found that Frazier had waived the venue issue, but that even if he had not, since "the underlying crime was assault with a dangerous weapon *in aid of racketeering*," venue was proper in the Eastern District of Michigan because it was "the center of the PMC enterprise," even though the shooting occurred in Ohio.  Next, the Sixth Circuit noted that in *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016), it "squarely rejected the argument that *Johnson* invalidated § 924(c)(3)(B) as unconstitutionally vague . . ."  The Sixth Circuit also rejected Frazier's complaint about the government's decision not to call as a trial witness the shooting victim Foster despite listing him on its witness list, because the government had not "suppressed" any evidence and had timely disclosed its decision not to call him.  Finally, the Sixth Circuit noted that the Court had attempted to assist Frazier with subpoenaing Foster to testify as a defense witness at trial, and that when Foster could not be located, the government "allowed Frazier's attorney to play an audio recording of Foster's statement shortly after the shooting that identified the shooters as African American."  The Sixth Circuit found that Frazier's counsel had not acted unreasonably in stipulating to the recording's admission because doing so made Frazier's point; Foster said the shooters were African American, but Frazier is Caucasian.

### ii. *Sixth Circuit Decision Following Remand from the U.S. Supreme Court*

Following resolution of his direct appeal, Frazier filed a petition for writ of certiorari, challenging, *inter alia*, that § 924(c)(3)(B)'s residual clause is unconstitutionally

vague. In light of the Supreme Court having previously found invalid an identically-worded residual clause in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court granted Frazier's petition, vacated the judgment as to his § 924(c) conviction, and remanded his case to the Sixth Circuit "for further consideration in light of *Sessions v. Dimaya*." *Frazier v. United States*, 139 S. Ct. 319 (2018). However, before the Sixth Circuit ruled on the remand, the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019), determined that § 924(c)'s residual clause was unconstitutionally vague.

Unfortunately for Frazier, the residual clause's invalidity did not mean his § 924(c) conviction was necessarily invalid because his conviction could still be supported under the statute's "elements clause." And indeed, the Sixth Circuit found that it was so supported because the predicate offense for Frazier's § 924(c) charge – assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C.§ 1959(a)(3) – was categorically a "crime of violence":

> On remand, Frazier argues that his conviction under § 924(c) should be reversed because § 1959(a)(3) is not a "crime of violence" falling within § 924(c)(3)(A)'s elements clause. Our recent precedent forecloses this argument. *Manners v. United States*, No. 17-1171 (6th Cir. Jan. 13, 2019). *Manners* held that assault with a dangerous weapon in aid of racketeering under § 1959(a)(3) categorically involves the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person. *Id.* at 7.

(ECF No. 820, PageID.11732).

Frazier again filed a petition for writ of certiorari with the U.S. Supreme Court challenging the Sixth Circuit's decision, but that petition was denied.

Frazier then filed the instant § 2255 motion.

**C.    Legal Standards**

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" based on a claim "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'"  *Hill v. United States*, 368 U.S. 424, 426-427 (1962).  To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).  A § 2255 petitioner seeking to set aside his sentence has the burden of establishing his case by a preponderance of the evidence.  *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003).

**D.    Analysis**

***i.    Ground 1***

In Ground 1, Frazier challenges his conviction on "Count 4 of the Third Superseding Indictment charging Use and Carry of a Firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) . . ."   (ECF No. 891, PageID.12730). Specifically, Frazier argues:

> The predicate offense which was used in determining whether or not to charge [him] under § 924(c), was in fact a State of Ohio Law violation, e.g., Ohio Rev. Code Ann. § 2903.11.  The full text of this statute reads: (A) No Person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's

unborn; (2) Cause or attempt to cause physical harm to [another or to] another's unborn by means of a deadly weapon or dangerous ordnance. While [Frazier's] case was on direct review, the U.S. Court of Appeals for the Sixth Circuit decided <u>United States v. Burris</u>, 912 F.3d 386 (6th Cir. 2019 (En banc).  The court interpreted to [sic] Ohio statute and came to the conclusion that, 'Ohio felonious assault and Ohio aggravated assault were too broad to always (or categorically) qualify as a violent-felony predicate, because they each criminalized more conduct than was described in the elements clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).'  Therefore, in light of <u>Burris</u>, [Frazier] is actually and factually innocent of a violation under § 924(c).

(ECF No. 891, PageID.12730).

In response, the government argues that Frazier already unsuccessfully "argued this on appeal," and that his argument is flawed, in any event, because he "was charged with VICAR assault with a deadly weapon under Ohio Revised Code § 2903.11(A)(2)," and "[t]he Sixth Circuit has found that every conviction under § 2903.11(A)(2) qualifies as a 'crime of violence' and 'violent felony' under USSG § 4B1.2(a)(1) and 18 U.S.C. § 924(e)(2)(B)(i)."  The Court finds merit as to the government's second argument.[2]

In Count Four of the indictment, Frazier was charged with violating 18 U.S.C. § 924(c) in connection with the shooting that occurred on October 27, 2012, in Columbus, Ohio.  (ECF No. 201, PageID.1677-78).  Count Four specified that the underlying "crime of violence" was the "**assault with a dangerous weapon** in aid of racketeering, as alleged in Counts Two and Three . . ."  (*Id.*, PageID.1678) (emphasis added).  In turn, both Counts Two and Three specified that the underlying crime was the violation of Ohio Revised Code

---

[2] Because the Court finds merit to the government's second argument, it declines to address its first one.

8

Section 2903.11.  While Frazier's argument might have teeth if the indictment had stopped

there because, as the *Burris* court held, the violation of Section 2903.11(A)(1) does not

necessarily require an act of physical violence, *Burris*, 912 F.3d at 397-98, the indictment

went further and made clear that Frazier was being charged with violating only the portion

of the Ohio statute that criminalized "knowingly . . . assault[ing] [the victim] with a

dangerous weapon . . ."  (ECF No. 201, PageID.1676, 1677).  Such charge clearly

corresponds to, and is encompassed by Section 2093.11(A)(2), which, as the government

argued in its response brief, has been found to categorically be a crime of violence.  Indeed,

the same case on which Frazier relies, *Burris*, explained:

> Subsection (A)(2) prohibits "[c]aus[ing] or attempt[ing] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance." O.R.C. § 2903.11(A)(2).  Ohio statutorily defines a "[d]eadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." O.R.C. § 2923.11(A).  "Physical harm" is defined by Ohio as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." O.R.C. § 2901.01(A)(3).  Since the use of a "deadly weapon" or "dangerous ordinance" while "[c]aus[ing] or attempt[ing] to cause physical harm" is necessary for a conviction under subsection (A)(2), it follows logically that using a device "capable of inflicting death" satisfies the element clause's use, attempted use, or threatened use of violent physical force.
>
> However, we need not even rely on logic and common sense because this court has already answered this question several times and come to the same conclusion.  The Sixth Circuit has adopted, as have other circuits, what is colloquially called the "deadly weapon rule" that is dispositive for this analysis unless applicable state law demands otherwise (here it does not): "When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under the elements clause."  []  It is worth noting that "the degree or threat of physical force" contemplated by the offense need be no greater than that of common law

battery.  []  We find no basis in the statutory language or relevant case law to distinguish between the "deadly weapon" and "dangerous ordinance."

Tellingly, Burris does not cite (nor can we find) a single instance of Ohio courts' applying subsection (A)(2) to conduct that does not qualify under the Guidelines elements clause.  Given the statutory language, Ohio case law, and our own precedents, we find that a conviction under subsection (A)(2) qualifies as a violent-felony predicate under the Guidelines.

*Burris*, 912 F.3d at 405-06 (internal citations and footnote omitted).

In sum, because the violation of Section 2903.11(A)(2) categorically qualifies as a "crime of violence" and "violent felony," Frazier's convictions on Counts Two and Three provide a proper predicate for his conviction on Count Four.  Accordingly, Frazier's challenge to his § 924(c) conviction fails.

### ii.      *Ground 2*

In Ground 2, Frazier challenges his conviction on Counts Two and Three, which charged him with violating 18 U.S.C. § 1959(a)(3) as to assaults of two separate victims. (ECF No. 201, PageID.1674-77).  Frazier appears to argue that he was not guilty of either offense because even if he engaged in the act of shooting each victim, that act did not constitute "racketeering activity" as defined by the statute.  (ECF No. 891, PageID.12731-32).  Frazier's argument lacks merit as the government was only required to show that Frazier was part of a RICO enterprise engaged in racketeering, not that the shooting itself was a "racketeering act."

As the Sixth Circuit already explained in rejecting similar arguments made by Frazier in his direct appeal:

18 U.S.C. § 1959(a) prohibits committing or conspiring to commit certain violent crimes, including murder and assault with a dangerous

10

weapon, "for the purpose of gaining entrance to or maintaining or increasing [one's] position in an enterprise engaged in racketeering activity . . . ." 18 U.S.C. § 1959(a).  To establish a VICAR violation, therefore, the government must show:

(1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

(ECF No. 744, PageID.11338-39) (citations omitted).

The Sixth Circuit went on to explain that the government had presented ample evidence to support the jury's verdict as to each of these prongs (*id.*, PageID.11339-44), and nothing in the statute requires that the "alleged crime of violence" also be a "racketeering act."  Indeed, as the Sixth Circuit explained, the government "does not have to prove that [Frazier's] particular assault affected interstate commerce."  (*Id.*, PageID.11340).  Moreover, the Sixth Circuit expressly found that sufficient evidence was admitted at trial such that "a rational jury could find that Frazier was motivated by a purpose to maintain or increase his position in PMC" when he shot the victim in question.  (ECF No. 744, PageID.11344).

For all of these reasons, Frazier is entitled to no relief on Ground 2.

### iii.    Ground 4

In Ground 4, Frazier argues that his Due Process rights were violated because he is actually and factually innocent of the "predicate state law violation" underlying his VICAR convictions – Ohio Rev. Code Ann. § 2903.11 "where the jury was not instructed to find [him] guilty."  (ECF No. 891, PageID.12735).  Specifically, after directing the Court to

portions of the trial transcript where the jury was given its instructions as to the VICAR charges, Frazier assets, "None of these instructions were on Ohio Rev. Code Ann. § 2903.11 being a essential element predicate offense in order to violated [sic] 18 U.S.C. § 1959(a)(3). The jury did not know what was required in order to find Petitioner guilty of a substantive violation of Ohio Rev. Code Section 2903.11 because they were not read the statute with jury charge/instructions." (*Id.*).

This argument lacks merit as its very premise is flawed. A review of the record makes clear that the jury was, in fact, instructed on the elements of Ohio Rev. Code. Ann. § 2903.11(A)(2). Specifically, as to Counts Two and Three, the Court provided the following instructions to the jury:

> Counts 2 and 3, assault with a dangerous weapon in aid of racketeering. Counts 2 and 3 of the indictment charge William Frazier with assaulting, or aiding and abetting, the commission of an assault on Keith Foster and Shalamar Thompson respectively, with a dangerous weapon in aid of racketeering. For you to find Defendant Frazier committed assault with a dangerous weapon in aid of racketeering, the government must prove each and every one of the following elements beyond a reasonable doubt: . . . fifth, that a particular Defendant committed or aided and abetted the commission of an assault with a dangerous weapon . . . I will now give you further instructions on each of these elements.
>
> * * *
>
> Element five, assault with a dangerous weapon. The next element the government must establish beyond a reasonable doubt to prove Defendant Frazier guilty of either of these two counts is that on or about October 27th, 2012, Frazier knowingly and unlawfully assaulted or aided and abetted in the assault of Keith Foster or Shalamar Thompson with a dangerous weapon. For you to find a person committed assault with a dangerous weapon under Ohio law, the government must prove each and every one of the following elements beyond a reasonable doubt: One, that Defendant Frazier knowingly

caused or attempted to cause or aided and abetted in the commission
of an act that caused; two, physical harm to Keith Foster and Shalamar
Thompson and, three, by means of a deadly weapon.

(ECF No. 720, PageID.10039, 10046).

These instructions tracked the terms of the salient statute – Ohio Rev. Code §
2903.11(A)(2) – which provides, "No person shall knowingly . . . (2) Cause or attempt to
cause physical harm to another or to another's unborn by means of a deadly weapon or
dangerous ordnance."  Ohio Rev. Code § 2903.11(A)(2).  The Court also instructed the
jury on the meaning of the terms "knowingly," "physical harm," and "deadly weapon."
(*Id.*, PageID.10046-47).

For all of these reasons, Frazier is entitled to no relief on Ground 4.[3]

_____

[3] At the end of his Ground 4 argument, Frazier notes that he was "not charged by the State of Ohio
for violating [§ 2903.11(A)(2)] . . . "  (ECF No. 891, PageID.12735).  But Frazier cites no law
holding that he cannot be charged for a federal VICAR crime if an underlying state charge was not
also filed against him.  Indeed, the VICAR charges don't require a finding that Frazier was
*convicted* in a state court of having committed the predicate offense.  Rather, as the Court
instructed, the jury was simply required to find, beyond a reasonable doubt, that Frazier
"committed" the conduct criminalized by that offense.  (ECF No. 720, PageID.10046).  Frazier
also asserts that the government presented no "physical evidence linking [him] to [the shootings]."
(*Id.*).  That argument fails, however, because, as the Sixth Circuit previously explained in rejecting
Frazier's direct appeal, "'[c]ircumstantial evidence alone is sufficient to sustain a conviction and
such evidence need not remove every reasonable hypothesis except that of guilt.'"  (ECF No. 744,
PageID.11338) (quoting *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) and *United
States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010)).  Moreover, at trial, Carl Miller, who was a
PMC member and present at the shooting, testified that the shooting began when Frazier "pulled
a Mag out, the pistol out, and started firing rounds into the crowd which struck [the Zulu's] national
president."  (ECF No. 543, PageID.6314).  When asked whether Frazier had later attempted to
explain his actions, Miller, testified, "Yes.  He told me specifically amongst a group that he
personally pulled the gun out and start shooting . . . [Frazier] specifically said he was the shooter."
(ECF No. 543, PageID.6314, 6316).  In rejecting his direct appeal, the Sixth Circuit found Frazier's
statements sufficient evidence to support his convictions.  (ECF No. 744, PageID.11337).  For all
of these reasons, Frazier is entitled to no relief on this aspect of Ground 4.

*iv.*      ***Grounds 3, 5, and 6***

The Court now turns to Frazier's three ineffective assistance of counsel claims in

Grounds Three, Five, and Six.  In Ground Three, Frazier argues that his trial counsel was

ineffective "for not having the two shooting victims [] testify at trial as [Frazier] requested

him to do."  (ECF No. 891, PageID.12733).  In Ground Five, Frazier argues that his trial

counsel was ineffective for not challenging the fact that the shooting happened in Ohio, but

he was charged and tried in Michigan.  (*Id.*, PageID.12736).  Finally, in Count Six, Frazier

argues that his appellate counsel was ineffective for not asking the Sixth Circuit to remand

the case to the district court for consideration of his argument that Ohio Revised Code Ann.

§ 2903.11 "no longer qualifies as a crime of violence" instead of allowing the Sixth Circuit

to address that issue directly on remand from the Supreme Court.  (*Id.*, PageID.12738-40).

These arguments all lack merit.

A petitioner seeking to establish ineffective assistance of counsel must satisfy the

standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466

U.S. 668 (1984).  First, he must show that his counsel's performance was deficient.

*Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious

that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment."  *Id.*  Counsel's performance is deficient only where it falls "below an

objective standard of reasonableness." *Id.* at 687-88.  Judicial scrutiny of counsel's

performance "must be highly deferential." *Id.* at 689.  A reviewing court should avoid

second-guessing counsel and must ensure that "every effort is made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show that counsel's deficient performance prejudiced the defense. *Id.* at 687. To satisfy the prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### a.    Ground 3

In Ground Three, Frazier argues that his trial counsel was ineffective "for not having the two shooting victims [] testify at trial as [Frazier] requested him to do." (ECF No. 891, PageID.12733). This argument is flawed in multiple respects. First, underpinning Frazier's argument is the incorrect suggestion that the government unfairly surprised him with a last-second decision not to call the shooting victims, Keith Foster and Shalamar Thompson. In fact, the government advised Frazier of this decision months before the trial began. (ECF No. 532, PageID.6148) ("On January 7, 2015, Defense counsel was advised by the government that the complaining witnesses were not going to be called as witnesses at trial . . ."). Second, even assuming Frazier requested his attorney to have the two shooting victims testify at his trial,[4] the circumstances here do not support a finding of

---

[4] In his Immediate Release Motion, Frazier references the fact that the Court found he had waived the attorney-client privilege as to this issue (*see* ECF No. 937), and asserts that his attorney was "to provide the government with information" related to his request to have the shooting victims testify. (ECF No. 957, PageID.13245). He goes on to complain that "the government has not submitted the information" from his attorney. (*Id.*). Whether or not the government received such information from Frazier's attorney, the government does not rely on any such information in

ineffective assistance.  To begin, issues such as whether to call a witness to testify at trial "are classic questions of trial strategy that merit *Strickland* deference."  *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012).  Frazier has not shown there was anything else his counsel could have done to bring the victims to court.  As the government argues in its response brief, the Court "actively attempted to assist [with locating the victims], even providing counsel with the name of a private investigator in addition to [offering] the services of the United States Marshals Service."  (ECF No. 911, PageID.12952) (citing ECF No. 726, PageID.10407, 10479-81; ECF No. 729, PageID.10635-36).  The government also attempted to provide assistance locating the victims.  (ECF No. 729, PageID.10634).  Finally, when those efforts failed, the government agreed that Frazier could play an audio recording of a statement Foster made shortly after the shooting in which he stated that the assailants were African-American.  (*Id.*, PageID.10634; ECF No. 717, PageID.9798-99, 9819-20, 9825).  This was a positive development for Frazier, who is Caucasian, because the jury would hear that the victim identified the shooter as being a different race from Frazier, without being subject to any cross-examination that might call that exculpatory statement into question.  It is therefore unsurprising that when the government made this concession, Frazier's counsel responded, "So, obviously, I think that

---

opposing Frazier's § 2255 motion.  Moreover, for the reasons explained herein, even assuming Frazier made the request he claims to have made, his Ground 3 argument fails.  Thus, the government's failure to provide such information to Frazier is not a basis to grant him the "immediate release" from custody he requests in the Immediate Release Motion.  Nor are any of the Immediate Release Motion's other vague arguments, which simply parrot the arguments of his § 2255 motion, grounds for granting Frazier an "immediate release" from custody.  Accordingly, for all of the reasons explained herein, Frazier's Immediate Release Motion **(ECF No. 957)** should be **DENIED**.

resolves our issue." (ECF No. 729, PageID.10635). Under these circumstances, Frazier's counsel's conduct was not unreasonable, and did not prejudice Frazier.

As to the other victim, Thompson, Frazier's only specific argument is that Thompson "did not have any ties to a motorcycle club and was just a photographer." (ECF No. 891, PageID.12733). While Thompson was identified at trial as a "member[] of a motorcycle club called the Zulus" (ECF No. 729, PageID.10694), his membership in a gang is irrelevant to Frazier's conviction. As the Sixth Circuit explained in rejecting Frazier's direct appeal, it was *Frazier's* "defense of *fellow* gang members" that supported the VICAR conviction, not his victim's gang status. (ECF No. 744, PageID.11344) (emphasis added). Since Thompson's status as a gang member was irrelevant to Frazier's conviction, Frazier's counsel could not have acted unreasonably in failing to call Thompson to testify as to his status.

For all of these reasons, Frazier is not entitled to any relief on Ground Three.

### b.    Ground 5

In Ground Five, Frazier challenges his trial counsel's failure to challenge the case's venue. That is, Frazier complains that the shooting took place in Columbus, Ohio, but he was charged and tried in the Eastern District of Michigan. This argument lacks merit. Frazier's counsel could not have acted ineffectively in failing to raise this issue because doing so would have been a frivolous endeavor. *Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005). As the Sixth Circuit already explained in rejecting Frazier's direct appeal, "[h]ere, the underlying crime was assault with a dangerous weapon *in aid of racketeering*, and venue was therefore proper in the Eastern District of Michigan—the

17

center of the PMC enterprise."  (ECF No. 744, PageID.11345) (emphasis in original).

Similarly, for venue purposes, § 924(c) has two separate conduct elements: (1) the use of

the firearm; and (2) the underlying crime of violence.  *United States v. Rodriguez-Moreno*,

526 U.S. 275, 280 (1999).  This charge is not a "point-in-time offense," but rather

incorporates all of the parts of the use of the firearm *and* the crime of violence.  Thus, a §

924(c) offense may be prosecuted in any venue in which the crime of violence may be

prosecuted," *id.* at 281–82, and for the reasons just explained, venue was proper in this

district for Frazier's VICAR charges.  Thus, Frazier is entitled to no relief on Ground 5.

### c.      Ground 6

In Ground Six, Frazier argues that his appellate counsel was ineffective for not

asking the Sixth Circuit to remand the case to the district court for consideration of his

argument that Ohio Revised Code Ann. § 2903.11 "no longer qualifies as a crime of

violence" instead of allowing the Sixth Circuit to address that issue directly on remand

from the Supreme Court.  (ECF No. 891, PageID.12738-40).  More specifically, he argues

that had such a remand been requested and granted, the district court "could have and

possibly [would have] granted [him] relief in light of <u>Burris</u>, Dimaya, or Davis."  (*Id.*,

PageID.12738).  This argument lacks merit because, in order to obtain relief, Frazier was

required to show that "but for counsel's unprofessional errors, the result of the proceeding

would have been different," *Strickland*, 466 U.S. at 694, and, as explained above, *see supra*

at 8-10, the Sixth Circuit had already determined in *Burris* that a conviction under §

2903.11(A)(2) categorically "qualifies as a violent-felony predicate under the Guidelines."

*Burris*, 912 F.3d at 406.  Since the district court would have been required to follow that

binding precedent, the outcome of Frazier's appeal would have been the same even if appellate counsel had been able to raise the issue before that court rather than the Sixth Circuit.  Thus, Frazier is entitled to no relief on Ground 6.

### E.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Frazier's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF No. 879)** and Frazier's Immediate Release Motion **(ECF No. 957)** be **DENIED**.

### F.    Certificate of Appealability

When considering a § 2255 motion, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  A petitioner must obtain a certificate of appealability ("COA") before he may appeal the denial of his § 2255 motion.  28 U.S.C. § 2253(c)(1)(B).  A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases like Frazier's where the petitioner's claims are rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, for all of the reasons stated above, the Court finds that Frazier did not make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and cannot satisfy the *Slack* criteria.  Accordingly, the Court should deny Frazier a certificate of appealability.

Dated: May 20, 2024                              s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Crim. P. 59(b)(2), and E.D. Mich. LR 72.1(d)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 20, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
