UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-14 WILLIAM FRAZIER,

    Defendant.
_____/

Case No. 13-cr-20764

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Dkt. 1006); (2) OVERRULING DEFENDANT WILLIAM FRAZIER'S OBJECTIONS
(Dkt. 1008); (3) DENYING DEFENDANT'S MOTION UNDER § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE (Dkt. 879); AND (4) DENYING
DEFENDANT'S MOTION FOR "IMMEDIATE RELEASE" (Dkt. 957)**

Defendant William Frazier has filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Dkt. 879).[1] He has also filed a "supplement" to that motion elaborating on his arguments (Dkt. 891) and a "Motion to Adopt Federal Rules of Civil Procedure to Rule 12 for Motion Attacking Sentence and Grant Petitioner Immediate Release" (Dkt. 957). These matters were referred to Magistrate Judge David R. Grand for a Report and Recommendation (R&R) (Dkts. 892, 958). On May 20, 2024, Magistrate Judge Grand issued an R&R recommending that the Court deny Frazier's motions (Dkt. 1006). Frazier filed an objection to the R&R (Dkt. 1008). The Government filed a response to the objections (Dkt. 1011).[2]

---

[1] This case was originally assigned to the Honorable Paul D. Borman, who presided over the trial and sentencing. The case was reassigned to the undersigned on June 28, 2024.

[2] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

1

For the reasons that follow, the Court overrules Frazier's objection and adopts the recommendation contained in the magistrate judge's R&R. Frazier's motion to vacate is denied. Additionally, the Court denies Frazier's motion for immediate release.

## I. BACKGROUND

The magistrate judge's R&R sets forth the relevant factual background as quoted from the Sixth Circuit Court of Appeals' November 30, 2017 decision affirming the conviction and sentence of Frazier (and one of his co-defendants, Christopher Odum) as follows:

> This appeal arises from the convictions of two members of the Phantom Motorcycle Club ("PMC"), William Frazier and Christopher Odum. The government brought various charges against these two appellants and twelve others in a fifteen-count indictment. Although the case initially proceeded as a consolidated trial against all defendants, Frazier and Odum were severed, and the case against them proceeded separately. After a three-week trial, the jury convicted Frazier of two counts of assault with a dangerous weapon in aid of racketeering, 18 U.S.C. § 1959(a)(3) (VICAR), and one count of use and carry of a firearm during, and in relation to, a crime of violence, 18 U.S.C. § 924(c). Odum was convicted of conspiracy to commit murder in aid of racketeering, 18 U.S.C. § 1959(a)(5) (VICAR).
>
> * * *
>
> PMC is an "outlaw" motorcycle club that has existed since 1968. The club has chapters in Michigan, Ohio, and six other states, and Detroit is the "mother" chapter. PMC has a hierarchical structure, with a national president, vice president, and enforcers. Below the national officers are local chapters with presidents and vice presidents. Members wear leather vests, known as "rags," which are important symbols in motorcycle club culture. Rags display a certain member's club and that club's territory, and PMC competes with rival outlaw clubs to be the dominant club within certain territories.
>
> Frazier became the vice president of the Pontiac chapter of PMC in 2010 after transferring from another PMC chapter. Frazier's charges and convictions in this case relate to a shooting that took place during a PMC anniversary gathering in Columbus, Ohio, in October 2012. After arriving in Columbus for the event, Frazier met up with other Phantoms—Vincente Phillips and Maurice Williams—at the PMC clubhouse there. These three men, while wearing their rags, went to get food at another club's clubhouse. While there, a man wearing a third club's rags bumped into Williams, and Williams and Phillips began fighting with him and another man who attempted to intervene. Seeing this altercation, Frazier fired two shots, hitting Keith Foster and Shalamar Thompson, who were both members of

      the Zulus motorcycle club. The PMC members then fled the scene and immediately returned to the PMC clubhouse to report to PMC leaders what happened. It was later determined that Foster was the Zulus's national president. As a result, PMC leadership decided that the Pontiac chapter would have to pay for the PMC national president, Antonio Johnson, to travel to Cleveland to meet with the Zulus in order to prevent retaliation for the shooting. At trial, Williams, Phillips, and Phantom-turned government informant Carl Miller all testified to this incident.

See R&R at 2–3 (citing United States v. Odum, 878 F.3d 508, 514–515 (6th Cir. 2017), cert. granted, judgment vacated sub nom. Frazier v. United States, 139 S. Ct. 319 (2018)).[3]

After the jury found Frazier guilty on all counts (Dkt. 553), the court sentenced Frazier to serve a total of 144 months in prison (Dkt. 679).

Frazier then filed a direct appeal with the Sixth Circuit Court of Appeals, arguing principally that the VICAR statue required the government to prove that he knew the PMC was engaged in racketeering activity, that his VICAR offense was not a crime of violence under § 924(c)(3)(A), and that the statute's "residual clause" in subsection (c)(3)(B) was unconstitutionally vague under Johnson v. United States, 576 U.S. 591 (2015). He also argued that the Eastern District of Michigan was not a proper venue for the § 924(c) charge because the shooting took place in Ohio, and that he was denied due process because the government chose not to call shooting victim Foster as a witness as trial. See United States v. Odum, 878 F.3d 508.

The Sixth Circuit rejected all of Frazier's arguments. The Sixth Circuit found sufficient evidence for a jury to conclude that PMC was an association-in-fact enterprise engaged in racketeering activity and that a VICAR conviction does not require the government to prove that the defendant actually knew the enterprise was engaged in racketeering activity. Id. at 516–518. The Sixth Circuit also rejected Frazier's § 924(c) arguments, finding that there was sufficient

---

[3] The R&R cites to the record cite for the Sixth Circuit's November 30, 2017 decision in this case, Dkt. 744. This Court will use the official Sixth Circuit citation in this Opinion and Order.

evidence to support the VICAR conviction, which was the predicate crime of violence, and that venue was proper in the Eastern District of Michigan—the center of the PMC enterprise—and that United States v. Taylor, 814 F.3d 340 (6th Cir. 2016) "squarely rejected the argument that Johnson invalidated § 924(c)(3)(B) as unconstitutionally vague." Id. at 519–520. The Sixth Circuit further found that Frazier's due process rights were not violated when the government did not call Foster to testify at the trial because the government timely disclosed its decision not to call him, the Court had attempted to assist Frazier in subpoenaing Foster to testify, and, when he could not be found, "allowed Frazier to play an audio recording of Foster's statement shortly after the shooting that identified the shooters as African American." Id. at 522–523. Frazier is Caucasian. Id.

Frazier then filed a petition for writ of certiorari with the United States Supreme Court, arguing that the residual clause in § 924(c)(3)(B) is unconstitutionally vague. Frazier v. United States, Supreme Court Case No. 17-8381, Pet. for Writ of Cert. filed Mar. 28-2018. The Supreme Court previously found that an identically-worded residual clause was invalid in Sessions v. Dimaya, 584 U.S. 148 (2018), and thus granted Frazier's petition, vacated the judgment, and remanded his case to the Sixth Circuit "for further consideration in light of Sessions v. Dimaya." Frazier v. United States, 139 S. Ct. 319 (2018). However, before the Sixth Circuit ruled, the Supreme Court decided in United States v. Davis, 588 U.S. 445 (2019) that § 924(c)'s residual clause was unconstitutionally vague.

On remand, the Sixth Circuit found that Frazier's § 924(c) conviction could still be upheld under the statute's "elements clause" because the predicate offense for Frazier's § 924(c) charge, "assault with a dangerous weapon in aid of racketeering under § 1959(a)[,] categorically involves the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person." United States v. Frazier, 790 F. App'x 790, 791 (6th Cir. 2020) (citing Manners

4

v. United States, 947 F.3d 377 (6th Cir. 2020)), cert. denied, 141 S. Ct. 314 (2020). Therefore, it fell within § 924(c)'s definition of a "crime of violence." Id.

Frazier filed a writ of certiorari, which the Supreme Court denied. Frazier v. United States, 141 S. Ct. 314 (2020).

In 2021, Frazier filed the instant motion to vacate his sentence under 28 U.S.C. § 2255. (Dkt. 879). He has also filed a "supplement" to that motion elaborating on his arguments (Dkt. 891) and a "Motion to Adopt Federal Rules of Civil Procedure to Rule 12 for Motion Attacking Sentence and Grant Petitioner Immediate Release" (Dkt. 957). These matters were referred to Magistrate Judge David R. Grand for an R&R (Dkts. 892, 958). On May 20, 2024, Magistrate Judge Grand issued an R&R recommending that the Court deny Frazier's motions (Dkt. 1006). Frazier filed an objection to the R&R (Dkt. 1008). The Government filed a response to the objections (Dkt. 1011).

For the reasons that follow, the Court overrules Frazier's objections and adopts the R&R.

## II. ANALYSIS

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified). Any issues raised for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013) (citing Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

Frazier asserts six objections to the magistrate judge's R&R. The Court will address each objection in turn.[4]

### 1. Whether the magistrate judge properly determined that the Ohio statute underlying Frazier's VICAR count—Ohio Revised Code § 2903.11(A)(2)—is a "crime of violence"

Frazier argues in his first objection that the Ohio statute underlying his VICAR count—Ohio Revised Code § 2903.11—is not a "crime of violence" for purposes of 18 U.S.C. § 924(c) and so he is factually innocent of that count. Objection at 3–4. Frazier's objection is rejected.

As the magistrate judge recognized in the R&R, the predicate Ohio statute is divisible, and while Section 2901.11(A)(1), the aggravated assault section, does not necessarily require an act of physical violence, Section 29011(A)(2), the assault with a dangerous weapon section, clearly does. R&R at 8-9, citing United States v. Burris, 912 F.3d 386, 397–98 (6th Cir. 2019) (en banc).[5] In

---

[4] To the extent Frazier generally objects to the R&R because the magistrate judge refused to "perform habeas corpus review" and because he did not conduct an evidentiary hearing, see Objection at 2–9, that objection fails. "An evidentiary hearing [for a § 2255 petition] is required unless the record conclusively shows that the petitioner is entitled to no relief." Martin v. United States, 889 F.3d 827, 832 (6th Cir. 2018) (citation and quotation marks omitted). An evidentiary hearing is not required in a § 2255 case if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Gabrion v. United States, 43 F.4th 569, 589 (6th Cir. 2022) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). As discussed infra, Frazier is not entitled to habeas relief because his allegations are either legally unsustainable, are contradicted by the record, or are conclusions rather than factual statements, and the record before the Court conclusively shows that Frazier is not entitled to relief. Accordingly, an evidentiary hearing is unnecessary. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (stating that "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

[5] The Ohio Felonious Assault statute provides, in relevant part:

(A) No person shall knowingly do either of the following:
   (1) Cause serious physical harm to another or to another's unborn;
   (2) Cause or attempt to cause physical harm to another or to another's unborn baby by means of a deadly weapon or dangerous ordinance.

6

Count Four of the Third Superseding Indictment, Frazier was charged with violating 18 U.S.C. § 924(c) in connection with the shooting that occurred on October 27, 2012, in Columbus, Ohio. Indictment at PageID.1677–1678 (Dkt. 201). This Count specified that the underlying "crime of violence" was a violation of the portion of the Ohio statute that criminalized "knowingly . . . assault[ing] [the victim] with a dangerous weapon in aid of racketeering, as alleged in Counts Two and Three . . ." and thus the charge corresponds to Section 2903.11(A)(2) of the Ohio statute. As the government correctly argues, Section 2903.11(A)(2) has been found categorically to be a "crime of violence" or "violent felony." See Burris, 912 F.3d at 405–406 (collecting cases finding that "a conviction under subsection (A)(2) qualifies as a violent-felony predicate under the Guidelines"); see also United States v. Morris, 885 F.3d 405, 412 (6th Cir. 2018) (noting the Court's "consistent determination that '[a] "crime of violence" under the career-offender provision is interpreted identically to a "violent felony" under [the] ACCA.'") (quoting United States v. Johnson, 675 F.3d 1013, 1017 n.3 (6th Cir. 2012)).

Accordingly, the magistrate judge properly found that, "because violation of Section 2903.11(A)(2) categorically qualifies as a 'crime of violence' and 'violent felony,' Frazier's convictions on Counts Two and Three provide a proper predicate for his conviction on Count IV," R&R at 10, and Frazier's first objection is overruled.

---

Ohio Revised Statute § 2903(A)(1), (2).

### 2. Whether the magistrate judge properly found that Frazier's October 27, 2012 shooting was an appropriate VICAR predicate

Frazier argues in his second objection that, even if he engaged in the act of shooting Foster and Thompson, that act is not "racketeering activity" as defined in 18 U.S.C. § 1961, and so he is innocent of VICAR. Objection at 4–5. This objection misconstrues the statute and is rejected.

As the magistrate judge, and the Sixth Circuit, explained in rejecting similar arguments, "[t]o establish a VICAR violation, . . . the government must show: (1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crimes of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." R&R at 10–11, citing United States v. Odum, 878 F.3d at 516.[6] Therefore, the "crime of violence" does not need to be a racketeering act listed under the statute, but need only be done for promotion within an enterprise that engages in racketeering activity. The Sixth Circuit found "sufficient evidence [introduced at trial] that PMC was an enterprise engaged in racketeering activity" because:

> The jury heard testimony about PMC members traveling from Michigan to Ohio to intimidate a rival motorcycle club, the Zulus, into permitting PMC to establish a chapter in Cleveland in 2009. The jury heard testimony about armed Phantoms taking rags from leaders of the Omens motorcycle club in 2010, taking the Black Bottoms motorcycle club's rags in 2013, and conspiring to murder members of the Hell Lovers motorcycle club in 2013, among other concerted acts. These actions were all undertaken with instruction and encouragement from PMC leadership and are only explained by reference to the goals of PMC as an enterprise.

---

[6] Frazier also complains that the magistrate judge "relies upon Sixth Circuit authorities without citing them when denying ground two." Frazier Obj. at 4. This is a non-starter because, as explained supra, the magistrate judge simply cited to Frazier's appeal using the record cite from the docket in this case (Dkt. 744), rather than the Sixth Circuit citation cited herein. See R&R at 10–11.

United States v. Odum, 878 F.3d at 517–518. The Sixth Circuit further found that there was sufficient evidence for a jury to find that Frazier shot Foster and Thompson to promote himself within the enterprise. Id. at 519.

Accordingly, Frazier is not factually innocent of VICAR and his second objection is overruled.

### 3. Whether the magistrate judge properly found that Frazier's counsel was not ineffective for not having the two shooting victims testify at trial

Frazier argues in his third objection that his trial counsel was ineffective "for not having the two shooting victims [Foster and Thompson] testify at [his] trial before the jury as [he] requested him to do so." Objection at 5–6. He contends that the government and defense counsel instead "came up with a joint stipulation not to have [Foster and Thompson] testify at [his] trial," and that "[h]ad these men testified before the jury, the jury would have found [Frazier] 'not guilty.'" Id. at 6. Frazier further argues that Thompson "did not have any ties to a motorcycle club and was just a photographer." Id.

However, as the magistrate judge properly found, Frazier's arguments are factually incorrect. First, the government did not unfairly surprise Frazier with a decision not to call Foster and Thompson to testify at the trial, but rather advised Frazier of this decision four months before trial. Def. Mot. in Limine at 2 (Dkt. 532) ("On January 7, 2015, Defense counsel was advised by the government that the complaining witnesses were not going to be called as witnesses at trial beginning on January 26, 2015."). When Frazier's counsel notified the Court during trial that he was attempting to serve Foster with a subpoena, the court "actively attempted to assist [in locating Foster], even providing counsel with the name of a private investigator in addition to [offering] the services of the United States Marshals Service." Trial Tr. Vol. 8, PageID.10407, 10479–10481 (Dkt. 726); Trial Tr. Vol. 10, PageID.10635–10636 (Dkt. 729). The government also attempted

to provide assistance locating Foster. Trial Tr. Vol. 10, PageID.10634. After all of these efforts failed, the government agreed that Frazier could play an audio recording of a statement Foster made shortly after the shooting in which he stated that the assailants were African-American. Id.; Trial Tr. Vol. 12, PageID.9798–9799, 9819–9820, 9825 (Dkt. 717). Frazier is Caucasian. Frazier therefore was able to offer hearsay testimony that was not subject to cross-examination by the government, and his counsel agreed "that [the stipulation] resolves our issue [regarding the inability to locate Foster]". Trial Tr. Vol. 10, PageID.10634–10635. "[W]hether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit Strickland deference." Rayborn v. United States, 489 F. App'x 871, 878 (6th Cir. 2012) (citing Harrison v. Motley, 478 F.3d 750, 756 (6th Cir. 2007)). Under these facts, the Court agrees with the magistrate judge that Frazier's counsel's conduct was not unreasonable and did not prejudice Frazier.

As for the unavailability of the second victim, Thompson, Frazier argues only that "Shalamar Thompson did not have any ties to a motorcycle club and was just a photographer." Objection at 6. However, Thompson was identified at the trial as a "member[] of a motorcycle club called the Zulus." Trial Tr. Vol. 10, PageID.10694. In any event, Thompson's membership, or not, in a gang is not relevant to Frazier's conviction, because, as the Sixth Circuit explained, it was Frazier's "defense of fellow gang members" that supported his VICAR conviction, not his victim's gang status. United States v. Odum, 878 F.3d at 519 (emphasis added) (quoting United States v. Gills, 702 F. App'x 367, 376 (6th Cir. 2017)). This Court agrees with the magistrate judge that "[s]ince Thompson's status as a gang member was irrelevant to Frazier's conviction, Frazier's counsel could not have acted unreasonably in failing to call Thompson to testify as to his status." See R&R at 17.

Accordingly, Frazier's third objection is overruled.

### 4. Whether the magistrate judge properly found that the jury was instructed on the elements of the Ohio law

Frazier argues in his fourth objection that he is innocent because "the jury was not instructed to find me guilty." Objection at 7–8. Frazier asserts that the jury instructions "do[] not make mention of the alleged predicate offense that the government relied upon to convict." Id. Frazier is incorrect and his objection is overruled.

The record in this case plainly shows that the jury was instructed as to the elements of Ohio Revised Statute § 2903.11(A)(2):

> Counts 2 and 3, assault with a dangerous weapon in aid of racketeering. Counts 2 and 3 of the indictment charge William Frazier with assaulting, or aiding and abetting, the commission of an assault on Keith Foster and Shalamar Thompson respectively, with a dangerous weapon in aid of racketeering. For you to find Defendant Frazier committed assault with a dangerous weapon in aid of racketeering, the government must prove each and every one of the following elements beyond a reasonable doubt: . . . fifth, that a particular Defendant committed or aided and abetted the commission of an assault with a dangerous weapon . . . I will now give you further instructions on each of these elements.
>
> * * *
>
> Element five, assault with a dangerous weapon. The next element the government must establish beyond a reasonable doubt to prove Defendant Frazier guilty of either of these two counts is that on or about October 27th, 2012, Frazier knowingly and unlawfully assaulted or aided and abetted in the assault of Keith Foster or Shalamar Thompson with a dangerous weapon. For you to find a person committed assault with a dangerous weapon under Ohio law, the government must prove each and every one of the following elements beyond a reasonable doubt: One, that Defendant Frazier knowingly caused or attempted to cause or aided and abetted in the commission of an act that caused; two, physical harm to Keith Foster and Shalamar Thompson and, three, by means of a deadly weapon.

Trial Tr. Vol 15, PageID.10039, 10046 (Dkt. 720). The Court also instructed the jury on the definitions of "knowingly," "physical harm," and "deadly weapon." Id. PageID.10046-10047.

Accordingly, the Court finds that the jury was properly instructed on the elements of Ohio Revised Statute § 2903.11(A)(2), and Frazier's fourth objection is overruled.

> **5. Whether the magistrate judge appropriately found that Frazier's trial counsel was not ineffective for failing to challenge the case's venue in Michigan instead of Ohio**

Frazier argues in his fifth objection that his trial counsel was ineffective for failing to file a motion challenging the venue of his trial in Michigan instead of Ohio. He states that the shooting happened in Ohio and not Michigan, and that his attorney should have filed a motion challenging venue. Objection at 8–9.

The magistrate judge properly found that Frazier's counsel was not ineffective for failing to raise this issue because "[f]ailing to file a frivolous motion does not constitute ineffective assistance of counsel." Goldsby v. United States, 152 F. App'x 431, 438 (6th Cir. 2005). As the Sixth Circuit held on direct appeal in this case, "[h]ere, the underlying crime was assault with a dangerous weapon in aid of racketeering, and venue was therefore proper in the Eastern District of Michigan—the center of the PMC enterprise." United States v. Odum, 878 F.3d at 519–520 (emphasis in original) (noting in addition that "[b]ecause [Frazier] did not raise this issue in the district court, it is waived"). The Sixth Circuit explained that "[i]n United States v. Rodriguez–Moreno, … the Supreme Court rejected the argument that § 924 is a 'point-in-time' offense and held that '[w]here venue is appropriate for the underlying crime of violence, so too it is for the § 924(c)(1) offense.'" Id. (quoting United States v. Rodriguez-Moreno, 526 U.S. 275, 281–282 (1999)).

Thus, Frazier's § 924(c) offense may be prosecuted in any venue in which the "crime of violence" may be prosecuted, which in turn may be prosecuted "where any part can be proved to have been done." Rodriguez-Moreno, 526 U.S. at 281–282 (citing United States v. Lombardo, 241 U.S. 73, 76 (1916)). In this case, the Detroit PMC chapter was the "mother chapter" of the national organization and much of the conduct establishing the PMC as an enterprise engaged in

racketeering activity occurred in this District. In addition, Frazier was a member of the Pontiac, Michigan chapter of PMC and obtained the gun he used to commit the assault from another Pontiac chapter member. Trial Tr. Vol. 6, PageID.6317 (Dkt. 543). Accordingly, because venue was proper for Frazier's VICAR offenses in the Eastern District of Michigan, it was proper for the § 924(c) offense.

Frazier's fifth objection therefore is overruled.

### 6. Whether the magistrate judge properly found that Frazier's appellate counsel was not ineffective for failing to request a remand to district court

Frazier argues in his final objection that his appellate counsel was ineffective because, following the Supreme Court's remand of this case to the Sixth Circuit, appellate counsel did not request that the Sixth Circuit remand the matter to the district court. He contends that the district court "would have possibly granted [him] relief and removed the 924(c)-conviction considering Burris, Dimaya, or Davis." Objection at 9–10. He complains that "the district court did not get a chance to hear the arguments" and "the district court was not given an opportunity to hear the case after remand." Id.

The magistrate judge found that Frazier's argument "lacks merit," and this Court agrees. The Supreme Court remanded this case to the Sixth Circuit only for "further consideration in light of Sessions v. Dimaya, 584 U.S. [148 (2018)]." Frazier v. United States, 139 S. Ct. 319 (2018). And then, after remand, the Supreme Court struck down the § 924(c)'s residual clause as unconstitutionally vague. United States v. Davis, 588 U.S. 445, 470 (2019). On remand, Frazier's counsel therefore argued before the Sixth Circuit that VICAR was not a "crime of violence" under the elements clause of § 924(c). The Sixth Circuit, applying its recent decision in Manners v. United States, 947 F.3d 377, 379 (6th Cir. 2020), decided that "assault with a dangerous weapon in aid of racketeering under § 1959(a)(3) categorically involves the use, attempted use, or

13

threatened use of force capable of causing physical pain or injury to another person." United States v. Frazier, 790 F. App'x at 791 (holding that Manners foreclosed Frazier's argument that § 1959(a)(3) is not a "crime of violence" falling within § 924(c)(3)(A)'s elements clause). Remanding this case to the district court would not have changed this result, as the district court would have been bound to follow the Sixth Circuit precedent in Manners and similarly determine that Frazier's VICAR conviction was a "crime of violence." Frazier cannot show that "but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland v. Washington, 466 U.S. 668, 694 (1984), and accordingly his ineffective assistance of counsel claim fails.

Therefore, the Court overrules Frazier's sixth objection.

### III. CONCLUSION

For the reasons stated above, Frazier's objection is overruled (Dkt. 1008), the R&R is adopted (Dkt. 1006), Frazier's motion to vacate is denied (Dkt. 879), and Frazier's motion for immediate release is denied (Dkt. 957). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).[7] Because Frazier has not made such a showing, a certificate of appealability shall not issue.

SO ORDERED.

Dated: September 25, 2024        s/ Mark A. Goldsmith
       Detroit, Michigan         MARK A. GOLDSMITH
                                 United States District Judge

---

[7] The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings, Rule 11(a).

14